UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PAUL FRANCIS PARKIN,

        Petitioner,

v.

DUNCAN MACLAREN,

        Respondent.

_____/

Case No. 1:18-cv-493

Honorable Janet T. Neff

### REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006). After undertaking the review required by Rule 4, I conclude that the petition should be dismissed because it is barred by the one-year statute of limitations.

**Discussion**

      I.       **Background**

Petitioner Paul Francis Parkin is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Chippewa County, Michigan. In December 2012, a jury of the Ionia County Circuit Court found Petitioner guilty of first-degree criminal sexual conduct (CSC I), Mich. Comp. Laws § 750.520b(1)(g), and second-degree criminal sexual conduct (CSC II), Mich. Comp. Laws § 750.520c(1)(g). On December 11, 2012, the court imposed sentences of 18 to 45 years for the CSC I conviction and 7 to 15 years for the CSC II conviction.

Petitioner did not file a timely appeal from his conviction. On January 17, 2014, he filed a motion for relief from judgment in state court, raising seven grounds for relief:

I. Trial counsel was ineffective, contrary to [Petitioner's] 6th Amendment right to effective assistance of counsel, in failing to adequately: (a) consult with and present an expert DNA witness who would testify that the DNA found in the amylase on the complainant could have been the result of an "innocent transfer" from [Petitioner], (b) establish that amylase could have come from a donor other than [Petitioner], and (c) object to the prosecutor's mischaracterization of amylase as "saliva."

II. Trial counsel was ineffective in failing to adequately pursue plea negotiations and utterly failing to explain any plea offers in a meaningful way, so that [Petitioner] could make an informed choice about whether to accept the tendered plea.

III. Trial counsel was ineffective post-sentencing, contrary to [Petitioner's] 6th Amendment right to effective assistance of counsel, in failing to adequately advise [Petitioner] of his right to appeal, failing to file an appeal as directed, and otherwise failing to provide any counsel concerning an appeal of [Petitioner's] jury trial convictions and sentencing.

IV. [Petitioner] was denied his 5th Amendment/14th Amendment rights to a fair trial as part of due process and his 6th Amendment right to a fair and impartial jury (jury bias) where the foreperson of the jury is the father of a person [Petitioner] assaulted approximately a year before trial in the CSC case.

> V.  [Petitioner] was denied his due process rights, guaranteed under the 5th and 14th Amendments, where the prosecutor engaged in various forms of misconduct at trial.
>
> VI. [Petitioner] was denied this 6th Amendment right to a jury trial on certain facts relied upon by the trial court at sentencing but not decided by the jury or admitted to by [Petitioner].
>
> VII. [Petitioner] was denied his 6th Amendment right to counsel at arraignment even though he specifically expressed his desire for counsel at arraignment.

(*See* Pet., ECF No. 1, PageID.5-10; ECF No. 1-1, PageID.19-20.)  These seven grounds for relief are also the basis for his habeas petition before this Court.

The trial court granted the motion for relief from judgment based on ground I, ordered a new trial, and declined to rule on the other grounds for relief.  The State of Michigan appealed the trial court's decision.  Petitioner did not file an appeal because he believed it was not necessary to do so.  (Mem. of Law in Supp. of Pet., ECF No. 2, PageID.58.)  In an opinion issued on August 11, 2016, the court of appeals reversed the decision of the trial court and reinstated the conviction because Petitioner failed to establish good cause for not raising ground I on direct appeal.  Petitioner subsequently applied for leave to appeal to the Michigan Supreme Court.  The Michigan Supreme Court denied leave to appeal on May 2, 2017, because it was not persuaded that the questions presented should be reviewed by that Court.  Petitioner, who is represented by counsel in this action, filed his habeas corpus petition on May 1, 2018.

II.   Statute of Limitations

Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  Section 2244(d)(1) provides:

3

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner did not appeal his judgment of conviction. The judgment did not become final, however, until the time for filing a delayed application for leave to appeal expired. Petitioner had six months to file a delayed application for leave to appeal. Consequently, the judgment of conviction became final on June 11, 2013, and the one-year deadline in § 2254(d)(1)(A) began to run from that date.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001)

4

(limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

Petitioner filed a motion for relief from judgment in state court on January 17, 2014, when there were approximately 145 days remaining in the limitations period. The trial court granted the motion, the Michigan Court of Appeals overturned that decision, and the Michigan Supreme Court denied leave to appeal on May 2, 2017. Petitioner asserts that he intends to file a motion in state court to obtain a ruling from the trial court on grounds II, IV, V, VI, and VII, because the court never decided those claims.

Petitioner's habeas corpus petition is not timely because his motion for relief from judgment ceased to be "pending" when the Michigan Supreme Court denied leave to appeal on May 2, 2017. After that date, there was nothing pending in state court that would continue to toll the statute of limitations. Accordingly, the statute of limitations began to run again on May 3, 2017, and expired on Monday, September 25, 2017. Petitioner filed his application on May 1, 2018, long after that deadline.

Even if Petitioner is able to revive his claims in state court through filing another motion, that new motion would not revive the statute of limitations. Collateral motions in state court can only pause a statute of limitations that has not yet expired; they cannot "reset" the clock. *Payton v. Brigano*, 256 F.3d 405, 407-08 (6th Cir. 2001). Thus, the petition for habeas corpus must be dismissed as untimely unless Petitioner qualifies for equitable tolling or an exception to the statute of limitations.

The one-year limitations period in § 2244(d) is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005). Petitioner bears the burden of showing that he is entitled to equitable tolling. *See Keenan*,

5

400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court. *See, e.g.*, *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335; *Hall*, 662 F.3d at 750.

Petitioner does not explain why he waited almost a year after the Michigan Supreme Court's decision to file his habeas petition, or to take any other action during that time to pursue his federal rights. He had already articulated his grounds for relief in his motion for relief from judgment. It should have been relatively easy for him to present those same claims to this Court in a petition under § 2254. The fact that Petitioner is untrained in the law, was proceeding without a lawyer for a time, or may have been unaware of the statute of limitations does not warrant tolling. *See Allen*, 366 F.3d at 403-04; *see also Craig v. White*, 227 F. App'x 480, 482 (6th Cir. 2007); *Harvey v. Jones*, 179 F. App'x 294, 299-300 (6th Cir. 2006); *Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse [late] filing."). This unexplained delay suggests that Petitioner was not pursuing his rights diligently. He does not contend that any extraordinary circumstances stood in his way of filing a timely petition. Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v.*

6

*Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 329 (addressing actual innocence as an exception to procedural default)). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *McQuiggin*, 133 S. Ct. at 1936.

In the instant case, Petitioner claims that he is entitled to the miscarriage-of-justice exception,[1] but he does not expressly assert that he is actually innocent, or that there is new evidence which makes it more likely than not that no reasonable jury would have convicted him. *Schlup*, 513 U.S. at 329. Rather, the thrust of his claim is that his trial attorney provided ineffective

---

[1] Petitioner raises the miscarriage-of-justice exception to excuse a possible procedural default for failing to raise his claims on direct appeal from his conviction. He does not raise the exception to excuse his failure to comply with the statute of limitations, because he apparently assumes that his petition is timely. The Court will consider his argument in favor of the miscarriage-of-justice exception in the context of the statute of limitations because the analysis is essentially the same in both contexts.

7

assistance by, among other things, failing to present critical expert testimony, and that these failures undermine confidence in the outcome of his criminal proceedings.

The Court does not have the full record of Petitioner's proceedings, but it does have the circuit court's opinion on his motion for relief from judgment and the court of appeals' opinion overturning that decision. Indeed, Petitioner relies solely upon the circuit court's opinion as the basis for his miscarriage-of-justice argument. (*See* Mem. of Law in Supp. of Pet., ECF No. 2, PageID.71.) Based on my review of the state court decisions describing Petitioner's proceedings and the evidence presented therein, Petitioner cannot meet the standard in *Schlup*. The "new evidence" upon which he relies does not make it more likely than not that no reasonable juror would have convicted him.

According to the two state court opinions, the criminal charges against Petitioner arose from events that occurred during a drunken St. Patrick's Day celebration in a hotel room where Petitioner, the victim, and several others were present. The state charged Petitioner with oral-vaginal penetration of the victim (CSC I) and sexual contact with the victim's breasts (CSC II) while she was intoxicated. *People v. Parkin*, No. 330534, 2016 WL 4251233, at *1 (Mich. Ct. App. Aug. 11, 2016). The victim did not remember the incident, but an eyewitness testified that Petitioner performed oral sex on the victim while she was "passed out." *Id.* Others who were present did not see anything. (*People v. Parkin*, No. 11-H-15215-FC (Ionia Cty. Cir. Ct. Nov. 12, 2015), ECF No. 1-3, PageID.30.) Also, Petitioner's friend testified that, while Petitioner was in jail on the CSC charges, Petitioner admitted performing oral sex on the victim. *Parkin*, 2016 WL 4251233, at *1. In addition, two other women testified that, on previous occasions, Petitioner had nonconsensual sexual intercourse with them while they were intoxicated. *Id.*

According to the circuit court, a "key ingredient" in Petitioner's conviction was "the presence of DNA found on the victim's breast and pubic area matching the defendant's DNA, and the 'identification' of the defendant's 'saliva' on the victim." (*See Parkin*, No. 11-H-15215-FC (Ionia Cty. Cir. Ct.), ECF No. 1-3, PageID.30.) Apparently, Petitioner's defense counsel hired a DNA expert who advised counsel not to challenge the prosecution's DNA evidence, even though the expert was aware that the sample from the victim's pubic area contained some DNA that did not correspond to the victim or to Petitioner. (*Id.*) After Petitioner's trial, a different DNA expert hired by Petitioner determined that "innocent transfer" of Petitioner's DNA was a "real possibility," because the samples taken from the victim's breast and pubic area contained a mixture of DNA associated with at least two donors. (*Id.*) Thus, there was a "very real potential" that an individual other than Petitioner was the "true contributor" of the DNA. (*Id.* at PageID.31.) The trial court thought it unreasonable for trial counsel not to challenge the state's DNA expert with expert testimony that would support an "innocent transfer" defense.

The trial court also thought it unreasonable for defense counsel to concede that the samples containing the DNA were "saliva," and to allow the prosecutor to repeatedly refer to the samples as saliva, when in fact they were "amylase." (*Id.*) Amylase is "indicative of saliva," but it is not necessarily saliva; according to Petitioner's post-trial DNA expert, amylase "has been shown to be naturally excreted from numerous body sides [sic] beyond the oral cavity." (*Id.*)

The circuit court believed that counsel's failures prejudiced Petitioner because the other evidence of his guilt was not very strong. The court believed that the eyewitness testimony lacked credibility because it was "conflicting" and "confusing," and the court discounted the testimony regarding Petitioner's admission of guilt as the testimony of a "jail 'snitch.'" (*Id.* at PageID.29-30, 32.) Ultimately, the court concluded that "[w]hile a battle of the experts might not

9

have ensured [Petitioner's] acquittal, counsel's failure[s] . . . undermined confidence in the outcome of this case[.]" (*Id.* at PageID.32.) In other words, Petitioner was entitled to a new trial because his claim in ground I satisfied the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). (*Id.*)

The circuit court's determination that Petitioner's counsel provided ineffective assistance does not suffice to meet the *Schlup* standard. In *Schlup*, the Supreme Court made clear that a petitioner asserting actual innocence "is required to make a stronger showing than that needed to establish prejudice" under *Strickland*. *Schlup*, 513 U.S. at 327. The circuit court did not apply the *Schlup* standard; thus, accepting the circuit court's conclusion does not necessarily mean that Petitioner has met the showing required by *Schlup*.

Indeed, parts of the circuit court's opinion suggest that Petitioner's new evidence cannot meet the *Schlup* standard. The circuit court indicated that presenting Petitioner's newly-obtained expert testimony would have resulted in a "battle of the experts," but would not necessarily have led to his acquittal. (ECF No. 1-3, PageID.32.) This appears to be a reasonable conclusion, because a jury hearing Petitioner's new evidence would still be confronted with the fact that Petitioner's DNA was present in samples recovered from the victim's private areas, not to mention the eyewitness testimony and the testimony about Petitioner's incriminating statements. The presence of a third party's DNA in the samples does not readily lead to the conclusion that Petitioner is innocent.

The circuit court's opinion is not helpful for understanding the import of Petitioner's new evidence. It briefly mentions the concept of "innocent transfer," but does not explain how that concept applies to Petitioner's case. Perhaps there is a compelling explanation of the evidence that supports Petitioner's innocence, but Petitioner has not offered one to this

Court. In other words, Petitioner has not demonstrated that his new evidence makes it more likely than not that no reasonable jury could have found him guilty. A reasonable jury could certainly conclude that Petitioner's DNA was on the victim's breast and pubic area in a substance "indicative of saliva" because he sexually assaulted her as charged.

To the extent Petitioner relies upon the DNA expert's opinion as his new evidence of actual innocence, rather than the state court's description of that opinion, he has not provided this Court with that evidence. Accordingly, because Petitioner has failed to provide evidence of actual innocence, he is not excused from the statute of limitations in 28 U.S.C. § 2244(d)(1).

In summary, on the record presently before this Court, Petitioner's action is barred by the statute of limitations. For the reasons stated, he is not entitled to equitable tolling or to an exception to the statute of limitations. Consequently, I recommend dismissing his petition because it is untimely.

The Supreme Court has directed the District Court to give fair notice and an adequate opportunity to be heard before dismissal of a petition on statute of limitations grounds. *See Day,* 547 U.S. at 210. This report and recommendation shall therefore serve as notice that the District Court may dismiss Petitioner's application for habeas corpus relief as time-barred. The opportunity to file objections to this report and recommendation constitutes Petitioner's opportunity to be heard by the District Judge.

### III.    Certificate of appealability

Even though I have concluded that Petitioner's habeas petition should be dismissed, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals

has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have concluded that Petitioner's application is untimely and, thus, barred by the statute of limitations. Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id*.

On the record before the Court, I find that reasonable jurists could not find it debatable whether Petitioner's application was timely. Therefore, I recommend that a certificate of appealability should be denied.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied because it is barred by the one-year statute of limitations. I further recommend that a certificate of appealability be denied.

Dated:   June 18, 2018                                   /s/ Ellen S. Carmody
                                                         Ellen S. Carmody
                                                         United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and

responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).